IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMILY MACKIE and<br>INSPIRED INTERIORS, INC., | )<br>)<br>) | |
| Plaintiffs, | )<br>) | Case No. 14-cv-09206 |
| v. | )<br>) | Judge Andrea R. Wood |
| MASON AWTRY, | )<br>)<br>) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT MASON AWTRY'S
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Dated: February 9, 2015

Kerryann M. Haase
Brian P. Paul
Sarah E. Flotte
Michael Best & Friedrich LLP
Two Prudential Plaza
180 N. Stetson Ave., Suite 2000
Chicago, IL 60601
(312) 222-0800
*Attorneys for Defendant
Mason Awtry*

## INTRODUCTION

The Court should dismiss Counts I, IV, V, IX, and X asserted by Plaintiffs Emily Mackie and her company, Inspired Interiors, Inc., against Mackie's ex-boyfriend, Defendant Mason Awtry. Plaintiffs accuse Awtry of accessing Mackie's Apple iCloud without permission and publishing defamatory statements about her on a website with a name similar to Inspired Interiors. Plaintiffs allege that Awtry violated federal computer fraud and privacy statutes by accessing her account, and that his supposed publication of defamatory comments gave rise to various state law claims. Although *all* of Plaintiffs' claims are legally and factually baseless, five of Plaintiffs' claims contain deficiencies that are apparent from the face of the complaint and cannot be cured by amendment. Accordingly, the Court should dismiss these claims with prejudice pursuant to Federal Rule 12(b)(6).

As a threshold matter, the Court should dismiss Plaintiffs' Computer Fraud & Abuse Act ("CFAA") claim, Count I, because they have not alleged—and cannot allege—compensable "damage" or "loss" under the statute. The law is clear: simply copying private data is not actionable under the CFAA, which compensates only for damage or loss associated with the computer system itself, such as lost or impaired data or service interruption. Here, Plaintiffs accuse Awtry merely of syncing Mackie's iCloud account and copying her information, which is not a cognizable injury under the statute.

Plaintiffs' claim under the Anticybersquatting Consumer Protection Act ("ACPA"), Count IV, should suffer the same fate. The ACPA was enacted to prevent bad faith registration of internet domain names with the intent to profit from the goodwill associated with another "distinctive" or "famous" trademark. Here, Plaintiffs do not make a single allegation that Inspired Interiors' domain name is either distinctive or famous, let alone plead facts that

2

plausibly support such an assertion. Moreover, Plaintiffs have not alleged – nor can they – that Awtry acted with bad faith intent to profit from the mark.

The Court also should dismiss Plaintiffs' Illinois Uniform Deceptive Trade Act ("UDTPA") claim, Count V. Plaintiffs' UDTPA claim is doomed as a matter of law for two reasons: (1) there is no allegation that Awtry demeaned the quality of Inspired Interiors' goods and services; and (2) there is no plausible basis for injunctive relief because the statements have been removed and there is no suggestion or indication in the amended complaint of future misconduct.

Plaintiffs' claim for tortious interference with prospective business relations, Count IX, is not cognizable because the amended complaint alleges merely a hope of potential unidentified business, which is insufficient to state a claim.

Finally, Plaintiffs' claim for general injunctive relief, Count X, should be dismissed because they allege no facts plausibly demonstrating the need for such relief. Indeed, this lawsuit is all about something that allegedly already transpired, with no plausible suggestion that the alleged misconduct is ongoing or likely to be repeated.

**BACKGROUND**

In evaluating this motion, the Court must accept as true the allegations in the amended complaint. With that in mind, the relevant facts alleged are as follows:

Mackie is an interior designer and the owner of Inspired Interiors. (Amd. Compl. ¶¶ 12-13.) Mackie and Awtry used to be in a relationship. (*Id.* ¶ 14.)

Inspired Interiors has its own website. (*Id.* ¶ 15.) When Mackie first sought to obtain a domain name, she wanted the name "inspiredinteriors.com" but learned it was owned by a third party. (*Id.* ¶¶ 16-17.) Mackie checked the status of this domain name "nearly every year" since

2003, but felt the $5,000-10,000 asking price was too expensive. (*Id.* ¶¶ 18-20.) Mackie discussed her interest in the domain name with Awtry. (*Id.* ¶ 22.) Mackie instead purchased a similar domain name, "inspiredinterior.com." (*Id.* ¶ 21.)

On October 14, 2014, Mackie received a voicemail from a former employee stating he believed Inspired Interiors' website had been hacked. (*Id.* ¶ 23.) That same day, a Chicago-based real estate agent told Mackie she had attempted to visit the company's website, but instead found a different website. (*Id.* ¶ 24.)

Upon investigation, Mackie discovered a website appeared at the domain name she always wanted, "inspiredinteriors.com." (*Id.* ¶ 25.) According to Plaintiffs, Awtry purchased the "inspiredinteriors.com" domain to be "confusingly similar" to Inspired Interiors' website and posted content on the site. (*Id.* ¶¶ 26-28, 40.) This "infringing website" displayed a picture of Mackie taken directly from the company's website, "advised visitors it would reveal the truth about Ms. Mackie," falsely claimed that Mackie was a "liar" and a "cheater," and claimed that she is "adulterous." (*Id.* ¶¶ 30-38.)

After discovering the infringing website, Mackie reviewed its WHOIS information and determined it contained a fake street address with a number that had recently been in Mackie's calendar. (*Id.* ¶¶ 42-44.) Mackie "became concerned that someone obtained access to her personal and professional calendar and other private information." (*Id.* ¶ 45.) Upon investigation, "Mackie learned that an unknown iPad Mini had 'synced' with information from her iPad through her Apple iCloud Account." (*Id.* ¶ 46.) According to Plaintiffs, it was Awtry who synced Mackie's iCloud in order to gain unauthorized access to both her Google e-mail account, which contained private stored electronic communications (*id.* ¶¶ 47-54), and her Google Drive account, which contained calendars, customers, and contacts (*id.* ¶¶ 59-63).

Plaintiffs allege that Awtry read this information and used it to harm Plaintiffs. (*Id.* ¶¶ 55, 57, 66.)

Since the infringing website's publication of the disparaging statements, "any individual reading the statements might believe that the Plaintiffs lack integrity in their employment and profession" (*id.* ¶ 68), and "might be prejudiced against the Plaintiffs in their profession" (*id.* ¶ 69). Moreover, "at least one prospective client has declined the Plaintiffs' services" based on the disparaging statements. (*Id.* ¶ 70.)

Plaintiffs' amended complaint[1] asserts ten causes of action: (I) computer fraud and abuse under the CFAA; (II) a claim under the Stored Communications Act; (III) a claim under the Electronic Communication Privacy Act; (IV) cyberpiracy under the ACPA; (V) unfair trade practices under the UDTPA; (VI) defamation *per se*; (VII) false light; (VIII) intrusion upon seclusion; (IX) tortious interference with prospective business relations; and (X) injunctive relief. Although all of these claims lack merit, the Court should dismiss with prejudice under Rule 12(b)(6) Counts I, IV, V, IX, and X.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), Plaintiffs must set forth "sufficient allegations based on more than mere speculation to state a claim for relief that is plausible on its face." *Enger v. Chi. Carriage Cab Co.*, 2014 U.S. Dist. LEXIS 177992, at *6 (N.D. Ill. Dec. 29, 2014) (Wood, J.) (Exhibit A) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While all well-pled facts are taken as true and viewed in a light most favorable to Plaintiffs, *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 742-43 (7th Cir. 2010), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, a claim is facially plausible only where the plaintiff

---

[1] The original complaint was filed against a John Doe defendant.

pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the alleged misconduct. *Id.* If the allegations in the complaint "fail[] to state a claim upon which relief can be granted," the complaint will be dismissed. Fed. R. Civ. P. 12(b)(6).

### I. Plaintiffs' computer fraud and abuse claim fails as a matter of law because they did not suffer compensable "damage" or "loss."

Plaintiffs' Computer Fraud and Abuse claim, Count I, fails as a matter of law and cannot be cured by amendment. Although primarily criminal in nature, the CFAA provides a private right of enforcement for violations that cause "damage" or "loss" as defined in the statute of at least $5,000. *Cassetica Software, Inc. v. Computer Scis. Corp.*, 2009 U.S. Dist. LEXIS 51589, at *8 (N.D. Ill. June 18, 2009) (Exhibit B); 18 U.S.C. §§ 1030(a)(4), 1030(g). And these terms have in turn been construed in a manner consistent with the CFAA's underlying concern, which is to remedy damage to computer systems and data. *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Int'l*, 616 F. Supp. 2d 805, 813 (N.D. Ill. 2009); *Instant Tech., L.L.C. v. DeFazio*, 2014 U.S. Dist. LEXIS 61232, at *67 (N.D. Ill. May 2, 2014) (Exhibit C); *SBS Worldwide, Inc. v. Potts*, 2014 U.S. Dist. LEXIS 15673, at *29 (N.D. Ill. Feb. 7, 2014) (Exhibit D); *see also Cassetica Software*, 2009 U.S. Dist. LEXIS 51589, at *8 ("The CFAA targets attacks on computer systems that cause ***damage*** or ***destruction*** to electronic data.") (emphases added) (citing *Int'l Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 420 (7th Cir. 2006)).

Here, Plaintiffs' allegations demonstrate they have no claim. Plaintiffs do not even attempt to plead they suffered "damage" under the CFAA. And for good reason, because that term is defined in the statute as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). Thus, courts consistently have found that merely copying electronic information from a computer system does not satisfy the "damage" element because the CFAA only recognizes damages\ to a computer system when the

6

violation caused a diminution in the completeness or usability of the data on a computer system. *Cassetica Software,* 2009 U.S. Dist. LEXIS 51589, at *9-10 (collecting cases). Because Plaintiffs do not, and cannot, allege facts plausibly suggesting a diminution in the completeness of or usability of computerized data, they have not pleaded "damage" sufficiently to state a claim.

Plaintiffs' allegations of "loss" also are not cognizable. "Loss" as defined in the statute is expressly tied to computer damage or a loss of data: "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its prior condition, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Courts in the Northern District "generally agree . . . that '[c]osts not associated or related to computer impairment or computer damages are not compensable under the CFAA." *SBS Worldwide*, 2014 U.S. Dist. LEXIS 15673, at *31 (quoting *Farmers Ins. Exch. v. Auto Club Grp.*, 823 F. Supp. 2d 847, 852 (N.D. Ill. 2011) (additional quotation and citation omitted)).

None of the alleged losses here are covered by the CFAA. Plaintiffs allege "losses aggregating in more than $5,000 including, but not limited to, the costs of responding to the . . . violations . . . in the form of information technology ("IT") costs, reputation management fees, and legal fees (including, but not limited to, attorney's fees and paralegal fees)." (Amd. Compl. ¶ 90.) Of course, none of these are compensable losses. The alleged reputation management and legal fees are not compensable because "economic costs unrelated to computer systems do not fall within the statutory definition of the term." *Cassetica Software,* 2009 U.S. Dist. LEXIS 51589, at *11 (citing cases). And Plaintiffs do not allege any plausible facts suggesting they incurred $5,000 in IT costs relating to any damage, loss of data, or impairment of service. *See*

*id.* at *13. Indeed, their amended complaint makes clear that information was synced and copied, with no damage or impairment to Mackie's computer and with no interruption of service. (Amd. Comp. ¶¶ 46, 73-90).

Accordingly, because Plaintiffs cannot plead around this fatal flaw, their CFAA claim should be dismissed with prejudice.

> II. **Plaintiffs' cyberpiracy claim must be dismissed because they failed to allege that the company's domain name is "distinctive" or "famous" as required by the statute or that Awtry profited from the mark.**

Plaintiffs' cyberpiracy claim, Count IV, also is doomed because they have not alleged—and cannot allege—facts plausibly suggesting that the domain name "inspiredinterior.com" is "distinctive" or "famous." "The ACPA was enacted to combat the bad faith registration of domain names with intent to profit from the goodwill associated with the trademarks of another." *Coach, Inc. v. P'ships & Unincorporated Ass'ns*, 2013 U.S. Dist. LEXIS 141413, at *9 (N.D. Ill. Oct. 1, 2013) (Exhibit E). To state a claim under the ACPA, 15 U.S.C. §1125(d), a plaintiff must allege, among other things, that it had a distinctive or famous mark at the time the domain name was registered. *Id.*

Distinctive marks are those that "serve the purpose of identifying the source of the goods or services." *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007). There are four gradations of distinctiveness: (1) generic—marks that suggest the basic nature of the product or service; (2) descriptive—marks that identify the characteristic of or quality of a product or service; (3) suggestive—marks that suggest characteristics of the product or service and require imagination by the consumer in order to be understood as descriptive; and (4) arbitrary—marks that bear no relationship to the product or service. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Generic terms are not protected. *Welding Servs.*, 509 F.3d at 1358. Descriptive terms are protected as distinctive only if the term acquires secondary

8

meaning, which occurs when the primary significance of a term in the minds of a consumer is not the product but the producer. *Id.* Suggestive and arbitrary marks are deemed inherently distinctive. *Id.* In addition, a trademark is "famous" "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. 15 U.S.C. § 1125(c)(2)(A).

Plaintiffs' ACPA claim should be dismissed because they make *no* allegation that Inspired Interiors' domain name is either distinctive or famous as required by the statute. Indeed, the amended complaint is silent altogether regarding this necessary element, which means the claim must be dismissed. *See, e.g., CSC Holdings L.L.C. v. Optimum Networks, Inc.*, 2011 U.S. Dist. LEXIS 1205443, at *12 (D. N.J. Mar. 28, 2011) (Exhibit F) (dismissing ACPA claim with prejudice where plaintiff "did not plead[ ] that their mark is distinctive or famous"). Moreover, Plaintiffs' pleading failure is no mere technicality, as the gravamen of the amended complaint makes clear that the Inspired Interiors' website is in no way famous or distinctive. Rather, it is clear that Inspired Interiors is, at best, a non-protectable descriptive term. Because this infirmity cannot be cured, the claim should be dismissed with prejudice.

Plaintiffs' claim fails for an additional, independent reason: they have not alleged that Awtry acted with bad faith intent to profit from the mark. *See* 15 U.S.C. 1125(d)(1)(A)(i) (liability attaches only where a defendant "has a bad faith intent to profit from that mark."). Here, the amended complaint does not allege that Awtry *actually profited* from the purchase of the domain (or how he supposedly profited). Instead, it alleges merely that he purchased the domain name in bad faith to divert customers from Plaintiffs. (Amd. Comp. ¶¶ 26, 123-26).

Under similar circumstances, the Northern District of Illinois has dismissed an ACPA claim where – like here – the plaintiff failed to allege that the defendant intended to profit from

9

the mark. In *Ganjavi v. Smith*, 2007 U.S. Dist. LEXIS 57332, *4 (N.D. Ill. July 31, 2007) (Exhibit G), the defendants "allegedly set up and published mock websites resembling plaintiff's registered website in name, design, and content, but included 'highly embarrassing content.'" The Court dismissed the plaintiff's ACPA claim pursuant to Rule 12(b)(6), reasoning, "[t]he complaint contains no allegation that [] any of the defendants attempted to or had an intent to profit from the alleged mark. Indeed, any such allegation would be inconsistent with plaintiff's theory that [the defendants] created a website in order to disparage or 'mock' plaintiff, not to profit in any way." Id. at *10. Here, too, Plaintiffs' complaint contains no allegation that Awtry attempted to prohibit from the allegedly infringing website. And any such allegation would contradict Plaintiffs' theory that Awtry created the website in order to defame or embarrass Mackie, his ex – not to profit in any way. Under the reasoning of *Ganjavi*, Plaintiffs' ACPA should be dismissed. To be sure, absent facts suggesting Awtry actually profited from the mark, the claim fails as a matter of law.

> **III. Plaintiffs' deceptive trade practice claim fails as a matter of law because the alleged statements did not disparage "goods and services" and there is no basis for injunctive relief.**

Plaintiffs' UDTPA claim, Count V, also is fatally flawed and should be dismissed. The UDTPA is aimed at curbing unfair trade practices that result in public deception, such as misleading trade identification or deceptive advertising. *MPC Containment Sys. v. Moreland*, 2008 U.S. Dist. LEXIS 60546, at *59-60 (N.D. Ill. July 23, 2008) (Exhibit H) (citing 815 ILCS 510 prefatory note). The statute provides private suits for injunctive relief, not damages, and supplies a remedy for disparagement of a product. *Fedders Corp. v. Elite Classics*, 279 F. Supp. 2d 965, 972 (S.D. Ill. 2003). Notably, "[s]o long as the statements at issue do not disparage the quality of the plaintiff's goods or services, no cause of action will lie under [the statute].'" *Id.*

(quoting *Roper Whitney of Rockford, Inc. v. TAAG Mach. Co.*, 2003 U.S. Dist. LEXIS 173, at *4 (N.D. Ill. Jan. 7, 2003) (Exhibit I) (additional citation omitted)).

This requirement dooms Plaintiffs' claim. Indeed, the alleged statements at issue do not address the goods or services of Inspired Interiors; rather, they call Mackie a liar, a cheater, and an adulterer. There simply is no nexus between these statements and ***anything*** about the quality of Inspired Interiors' goods or products, which means Plaintiffs cannot state a claim under the UDTPA. *See, e.g.*, *Am. Kitchen Delights, Inc. v. John Soules Foods, Inc.*, 2014 U.S. Dist. LEXIS 137030, at *13 n.7 (N.D. Ill. Sept. 29, 2014) (Exhibit J) (dismissing UDTPA claim in absence of statements that "demeaned the quality" of plaintiff's products); *Fedders*, 279 F. Supp. 2d at 972 (UDTPA does not apply where "the challenged statements are unrelated to the quality of the counter-claimant's products"). Plaintiffs do allege in conclusory fashion that by publishing the comments, Awtry "intended to impute a meaning that the Plaintiffs lack credibility as an interior design business" and "intended to disparage the Plaintiffs' services." (Am. Compl. ¶¶ 131, 134.) As a threshold matter, there are no plausible, factual allegations that substantiate this conclusion. But regardless, even if there were, generics statements like those at issue here, "liar" or "cheater," are not actionable under the statute. *See Fedders*, 279 F. Supp. 2d at 972 ("statements that impute a want of integrity are not actionable under the UDTPA").

Moreover, Plaintiffs have not alleged a plausible basis for injunctive relief under the statute because the alleged statements have long been removed and there are ***no*** plausible factual allegations suggesting any threat of future publication. *See Comtel Techs., Inc. v. Schwendener, Inc.*, 2005 U.S. Dist. LEXIS 8370, at *32 (N.D. Ill. Feb. 22, 2005) (Exhibit K) (dismissing UDTPA claim where no alleged basis that past disparaging comments would continue, noting that "[a]bsent a threat of future disparaging misrepresentations, there is no need for injunctive

11

relief, and, therefore no claim under the UDTPA."); *see also Chi Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 464 F.3d 651, 659 (7th Cir. 2006) (affirming dismissal of UDTPA claim where complained of transgressions had ceased). Thus, even if the alleged statements are actionable, Plaintiffs' claim for injunctive relief under the UDTPA is not cognizable and must be dismissed with prejudice.

IV. **The Court should dismiss Plaintiffs' claim for tortious interference with prospective business relations because they allege merely a hope of potential business.**

Plaintiffs' tortious interference with prospective business relations claim, Count IX, also should be dismissed with prejudice. To state a claim for this tort under Illinois law, a plaintiff must allege, among other things, a reasonable expectancy of entering into a business relationship. *See, e.g., Huon v. Breaking Media, L.L.C.*, 2014 U.S. Dist. LEXIS 168265, at *53 (N.D. Ill. Dec. 4, 2014) (Exhibit L) (citing *Voyles v. Sandia Mortgage Corp.*, 751 N.E.2d 1126, 1133-34 (Ill. 2001) (additional citations omitted)). Here, Plaintiffs' allegations fall woefully short of stating a claim, offering only vague and general assertions that Awtry's actions interfered with "consumers and prospective customers who would find the Plaintiffs' business through the internet." (Am. Compl. ¶¶ 200, 201.); *see also id.* ¶ 204 ("prospective clients"). There are ***no*** plausible factual allegations that supply any bases for Plaintiffs' having a "reasonable expectancy of entering into a business relationship."

At most, Plaintiffs' allegations amount to nothing more than a ***mere hope*** of future business, not a concrete, specific business opportunity that was lost. And courts have held time and again that "a reasonable expectancy 'requires more than the hope opportunity of a future business relationship.'" *Huon*, 2014 U.S. Dist. LEXIS 168265, at *53 (quoting *Bus. Sys. Eng'g, Inc. v. Int'l Bus. Mach. Corp.*, 520 F. Supp. 2d 1012, 1022 (N.D. Ill. 2007) (additional citations omitted); *see also Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503 (7th Cir. 1998)

(affirming dismissal of tortious interference claim where "plaintiff alleged merely that he wished to continue working as a commercial pilot"); *Emery v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 2003 U.S. Dist. LEXIS 16403, at *38 (N.D. Ill. Sept. 18, 2003) (Exhibit M) (dismissing claim where plaintiff alleged "no more than the mere hope [of obtaining] concrete opportunities").

*Huan* is instructive. There, the district court dismissed allegations similar to those lodged here. The plaintiff was an attorney who sued websites for publishing stories about his criminal trial, including a claim for tortious interference with business relations/economic advantage. The plaintiff alleged that he "held a reasonable expectation of entering into valid business relationships," and that he had suffered "a decline in prospective business" and "remains concerned that individuals and organizations including prospective legal clients will choose not to utilize his services." *Huon*, 2014 U.S. Dist. LEXIS 168265, at *53-54. The district court dismissed the claim with prejudice under *Twombley*, noting that such "unsupported" "conclusory statements" were "insufficient to allege that [plaintiff] had a reasonable business expectancy." *Id.* at *54. The court concluded these allegations failed to state a claim because "[a]t best [they] establish[ed], when read in the light most favorable to the plaintiff, that [he] **hoped** to obtain legal clients or enter into business relationships." *Id.* The same outcome is warranted here.

V. **Plaintiffs' claim for injunctive relief should be dismissed because the alleged statements have long been removed and the amended complaint alleges no facts that plausibly suggest future misconduct.**

Finally, the amended complaint is bereft of factual allegations plausibly demonstrating the need for injunctive relief. Thus, Count X also should be dismissed with prejudice. *See generally Plummer v. Am. Institute of Certified Pub. Accountants*, 97 F.3d 220, 229 (7th Cir. 1996) (setting forth familiar tenets for injunctive relief, including irreparable injury and inadequate remedy at law). Indeed, short of general platitudes reciting the elements, Plaintiffs offer no factual bases demonstrating that the alleged misconduct is ongoing or likely to recur.

13

Notably, the alleged statements do not appear on the website. And there is *no* suggestion, let alone a factual allegation, that there is any threat of similar violations in the future.

Thus, Plaintiffs have not alleged sufficiently either irreparable injury or that recovery of damages is somehow inadequate. In short, this lawsuit is all about something that allegedly already transpired, with no plausible suggestions that the alleged misconduct is ongoing or to be likely repeated. Thus, Plaintiffs' claim for injunctive relief should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, this Court should dismiss with prejudice pursuant to Rule 12(b)(6) Counts I, IV, V, IX, and X of Plaintiffs' amended complaint.

Dated: February 9, 2015

Respectfully submitted,

MASON AWTRY,
Defendant.

By: /s/ Kerryann M. Haase
One of His Attorneys

Kerryann M. Haase
Brian P. Paul
Sarah E. Flotte
Michael Best & Friedrich LLP
Two Prudential Plaza
180 North Stetson Avenue, Suite 2000
Chicago, Illinois 60601
Telephone: 312.222.0800
Facsimile: 312.222.0818

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2015, I electronically filed the foregoing ***Memorandum In Support of Defendant Mason Awtry's Motion to Dismiss the Amended Complaint*** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Charles Lee Mudd, Jr.
Meghan Kathleen Nugent
Mudd Law Offices
3114 W. Irving Park Rd., Suite 1W
Chicago, IL 60618

/s/ Kerryann M. Haase
Attorney for Defendant Mason Awtry
Michael Best & Friedrich LLP
Two Prudential Plaza
180 North Stetson Avenue, Suite 2000
Chicago, Illinois 60601
Phone: (312) 222-0800
E-mail: khminton@michaelbest.com