IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMILY MACKIE and INSPIRED INTERIORS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | No. 14-cv-09206 |
| v. | ) ) | Judge Andrea R. Wood |
| MASON AWTRY and MICHAEL MAYES, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Emily Mackie and her company, Inspired Interiors, Inc., ("Plaintiffs") have brought this lawsuit claiming that Defendants Mason Awtry and Michael Mayes acquired a website with an address confusingly similar to that of the Inspired Interiors site and used that site to make false and defamatory statements about Mackie. Plaintiffs also allege that Awtry gained unauthorized access to Mackie's personal and business contacts, calendars, and messages on third-party storage sites. Plaintiffs seek relief for this alleged misconduct under various statutory and common law theories. Now before the Court is Awtry's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss five of the ten counts of Plaintiffs' Second Amended Complaint: Count One, a claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; Count Four, a claim under the Lanham Act, 15 U.S.C. 1125(a); Count Five, a claim under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); Count Six, a claim under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 et seq.; and Count Ten, an Illinois common law claim for

tortious interference with prospective business relations. For the reasons detailed below, the motion is denied.[1]

## BACKGROUND

The following factual allegations are taken from Plaintiffs' Second Amended Complaint (Dkt. No. 31) and accepted as true for purposes of Defendants' motions to dismiss. *Khorrami v. Rolince*, 539 F.3d 782, 784 (7th Cir. 2008).

Mackie is an interior designer and the owner of the Inspired Interiors design firm. (Second Am. Compl. ¶¶ 13, 14, Dkt. No. 31.) Mackie sought to acquire the domain name inspiredinteriors.com for her company's website. (*Id.* ¶ 18.) When she found that the name was already owned by a third party who wanted at least $5,000 to relinquish it, she instead acquired the domain name inspiredinterior.com. (*Id.* ¶¶ 17-19, 21-23.) Mackie discussed purchasing the inspiredinteriors.com name with Awtry. (*Id.* ¶ 24.) Defendants acquired the inspiredinteriors.com domain name with knowledge of Mackie's desire to own the name and its similarity to the name of her company's website. (*Id.* ¶¶ 28-30, 41.)

Defendants used the inspiredinteriors.com domain name to launch a website where they posted Mackie's picture along with content that described her as a liar and a cheater. (*Id.* ¶¶ 32, 35, 36, 38.) The website also contained statements that updates were "coming soon." (*Id.* ¶ 39.) In addition, Awtry gained unauthorized access to Mackie's private third-party data storage accounts, thereby obtaining her private personal and business information. (*Id.* ¶¶ 49, 53-69.) Thereafter, a former employee told Mackie that he thought her company's website had been hacked, and a prospective business partner told Mackie that she had tried to visit her company's website but had found a different site instead. (*Id.* ¶¶ 25, 26.) Plaintiffs had a reasonable

---

[1] Subsequent to the filing and briefing of the motions to dismiss, Plaintiffs voluntarily dismissed, with prejudice, their claims against Mayes. Accordingly, his motion to dismiss (Dkt. No. 66) is denied as moot.

expectation of entering into and continuing a valid business relationship with that prospective partner. (*Id.* ¶ 221.) Defendants' conduct prevented Plaintiffs' legitimate expectancies from developing into valid business relationships. (*Id.* ¶ 228.) Plaintiffs hired information technology professionals to investigate the suspected hack of their information and to protect against future occurrences. (*Id.* ¶ 92.) They spent more than $5,000 in information technology costs and attorney's fees in responding to Defendants' actions. (*Id.* ¶ 94.)

Plaintiffs' Second Amended Complaint asserts ten claims for relief; Awtry challenges the sufficiency of five of those claims. Count One alleges that Awtry violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, by accessing Mackie's private information without authorization. In Count Four, Plaintiffs assert that Defendants intentionally used the inspiredinteriors.com domain name to create a false association with Plaintiffs' business, thereby violating the Lanham Act, 15 U.S.C. § 1125(a). Count Five alleges that Defendants' domain name use also violates the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). In Count Six, Plaintiffs allege that the false statements about her on the inspiredinteriors.com website violated the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS § 510/1. Count Ten asserts an Illinois common law tort claim for tortious interference with prospective business relations. Awtry seeks dismissal of these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

In assessing the sufficiency of a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations in the complaint as true and views them in the light most favorable to the plaintiffs. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). The complaint must provide enough factual information to state a claim to relief that is plausible on its face and raises a right

3

to relief above the speculative level. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 914 (7th Cir. 2015).

I. **Computer Fraud and Abuse Act**

Awtry argues that Plaintiffs' CFAA claim is insufficient because it fails to allege any damages for which the statute allows recovery. The CFAA penalizes those who knowingly access computers without authorization and creates a private right of action for those who have suffered "damage or loss" as a result of a violation of its terms. 18 U.S.C. §§ 1030(a), (g). Some courts in this District have held that "damage or loss" is limited to diminution in the completeness or usability of the data on a computer system. *See, e.g.*, *Cassetica Software, Inc. v. Computer Scis. Corp.*, No. 09 C 0003, 2009 WL 1703015, at *3 (N.D. Ill. June 18, 2009). Plaintiffs' complaint alleges losses resulting only from the costs of investigation of the impact of the suspected hacking, measures to prevent future occurrences, and attorney's fees. Because Plaintiffs do not allege loss of or damage to their data or systems, Awtry asserts that their damages are not covered.

The "damage or loss" analysis upon which Awtry relies has not yet been adopted by the Seventh Circuit and has not been universally accepted in this District, however. Numerous courts, citing the CFAA's explicit definition of "loss" as including "any reasonable cost to any victim," including "the cost of responding to an offense and conducting a damage assessment," have interpreted the provision to include the costs associated with conducting investigation and security assessments in response to a suspected violation of the CFAA. 18 U.S.C. § 1030(e)(11)); *Pascal Pour Elle, Ltd. v. Jin*, 75 F. Supp. 3d 782, 791 (N.D. Ill. 2014); *Farmers Ins. Exch. v. Auto Club Grp.*, 823 F. Supp. 2d 847, 854-55 (N.D. Ill. 2011) (collecting cases). This Court finds

4

the analysis of those cases to be persuasive and concludes that Plaintiffs need not allege damage to or unavailability of their data or systems to allege "loss" for CFAA purposes.

The CFAA also restricts private rights of action to plaintiffs whose aggregated loss as a result of a violation is at least $5,000. 18 U.S.C. § 1030(c)(4)(A)(i)(I). Awtry notes that Plaintiffs' complaint alleges expenditures for both information technology costs and attorney's fees; he contends that attorney's fees are not losses covered by the CFAA and that Plaintiffs have thus failed to allege loss above the threshold required to bring this action. But Plaintiffs' complaint alleges that they spent "more than $5,000" on the aggregate of information technology costs and attorney's fees, and does not detail their expenditures. Their pleading thus does not allege that their expenditures exclusive of attorney's fees were less than the $5,000 loss threshold amount. Accordingly, a conclusion that Plaintiffs' non-attorney losses fell short of $5,000 may only be reached by drawing factual inferences in Awtry's favor, an improper practice at the motion to dismiss stage. The Court concludes that Count One of Plaintiffs' complaint states a sufficient CFAA claim for relief.

## II. Anticybersquatting Consumer Protection Act

The ACPA prohibits registration or use of, or trafficking in, a domain name if the defendant's name was identical or confusingly similar to the plaintiff's distinctive or famous mark and if the defendant had a bad faith intent to profit from the use of the plaintiff's mark. 15 U.S.C. § 1125(d). Awtry contends that Plaintiffs' complaint must be dismissed because they have not sufficiently alleged that their "Inspired Interiors" mark was distinctive or famous. But the Second Amended Complaint explicitly alleges that the name is distinctive, that customers identify it with Plaintiffs, and that they identify it with an upscale interior design service. (Second Am. Compl. ¶¶ 122, 123, 138, Dkt. No. 31.) Whether a mark is sufficiently distinctive

to be protectable without proof of secondary meaning and whether it has acquired secondary meaning are questions of fact. *Chattanoga Mfg., Inc. v. Nike, Inc.*, 140 F. Supp. 2d 917, 923-24 (N.D. Ill. 2001). Plaintiffs' ACPA claim thus cannot be dismissed at the pleadings stage because of insufficient claims of a protectable trademark. Awtry also argues that insufficient allegations of a protectable trademark are fatal to Plaintiffs' Lanham Act claim in Count Four. But the Court's conclusion regarding the factual nature of the trademark-protection question in the ACPA context also dictates rejection of Awtry's similar arguments as to the Lanham Act claim.

Awtry argues that a valid ACPA claim must include an explicit allegation that Defendants intended to profit from their use of Plaintiffs' mark and that the Second Amended Complaint must be dismissed because it lacks any such allegation. But ACPA claims have been found sufficient even in the absence of explicit allegations of intent to profit when the complaint's allegations raise a plausible inference of such intent. In *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 915 (N.D. Ill. 2007), for example, the plaintiff's complaint explicitly alleged bad faith, but included no similarly specific claim of the defendant's intent to profit from the confusion between marks. That intent was nonetheless inferred from the plaintiff's allegations that the defendant was a direct competitor, and the complaint was found sufficient to state a claim for relief. *Id.*

Here, Plaintiffs' complaint does not claim that the parties were competitors or that Defendants intended to siphon customers from Plaintiffs' business for their own. But the complaint does explicitly allege that Mackie had discussed with Awtry her desire for the inspiredinteriors.com domain name and that Defendants purchased the name with knowledge of that desire. The intent to profit from registration of a domain name by selling it to a similarly-named business is "exactly the wrong Congress intended to remedy when it passed the ACPA."

*Ford Motor Co. v. Catalanotte*, 342 F.3d 543, 549 (6th Cir. 2003). Even in the absence of a specific profit-motive allegation, Plaintiffs' complaint raises a plausible inference of the existence of such motive: to provoke Plaintiffs to offer value to acquire the domain name. Count Five of Plaintiffs' complaint is thus sufficient to state a claim for relief under the ACPA.

**III.    Uniform Deceptive Trade Practices Act**

The UDTPA prohibits various deceptive trade practices, including disparagement of the goods, services, or business of another entity by a false or misleading representation of fact. 815 ILCS 510/2(a)(7). Count Six of Plaintiffs' complaint alleges that Defendants violated the UDTPA by publishing on the inspiredinteriors.com website statements that Mackie was a liar and a cheater.

Awtry correctly notes that commercial disparagement and defamation are separate legal concepts under Illinois law and that the UDTPA's prohibition against commercial disparagement relates only to statements about the quality of a plaintiff's goods or services. *See Fedders Corp. v. Elite Classics*, 279 F. Supp. 2d 965, 972 (S.D. Ill. 2003). He argues that the claimed statements about Mackie are directed to her personal integrity rather than her business offerings and are therefore not actionable under the statute. But Illinois law acknowledges the possibility that a single statement can constitute both commercial disparagement and defamation. *See Allcare, Inc. v. Bork,* 531 N.E.2d 1033, 1037 (Ill. App. Ct. 1988). In such circumstances, "both causes of action may lie." *Crinkley v. Dow Jones & Co.,* 385 N.E.2d 714, 720 (Ill. App. Ct. 1978). According to Plaintiffs' complaint, Inspired Interiors provided design services through Mackie's personal services. Their allegations raise a reasonable inference that a reference to Mackie's dishonesty could relate to the quality of the service she provides. The pleadings do not support an inference that the alleged website postings can be properly construed only as relating to

Mackie's personal behavior rather than her business offerings. Awtry's motion is accordingly denied as to Count Six of Plaintiffs' complaint.

## IV. Tortious Interference With Prospective Business Relations

Count Ten of the complaint asserts a claim for tortious interference with Plaintiffs' prospective business relations. "Under Illinois law, the elements of a claim for tortious interference with business expectancy are: (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of this expectancy; (3) an intentional and unjustified interference by the defendant inducing or causing a breach or termination of the expectancy; and (4) damages to the plaintiff resulting from such interference." *Am. Audio Visual Co. v. Rouillard*, No. 07 C 4948, 2010 WL 914970, at *2 (N.D. Ill. Mar. 9, 2010). Awtry contends that a valid tortious interference claim must allege a reasonable expectancy of a business relationship rather than the mere hope of one. But Plaintiffs have indeed alleged more than a mere hope of a business relationship: their complaint identifies a specific person with whom they had a reasonable expectation of entering into a business partnership. (Second Am. Compl. ¶¶ 26, 221, 228, Dkt. No. 31.) This allegation is sufficient to raise a plausible inference of a reasonable expectation rather than a mere hope of a future relationship.

## CONCLUSION

For the foregoing reasons, Defendant Awtry's motion to dismiss (Dkt. No. 32) is DENIED.

ENTERED:

Dated: September 27, 2016

_____

Andrea R. Wood
United States District Judge